**GARY W. et al.,**

v.

**STATE OF LOUISIANA et al.**

**Civ. A No. 74–2412.**

United States District Court,
E. D. Louisiana.

Feb. 3, 1977.

Rittenberg & Wilks, William E. Rittenberg & Dale C. Wilks, New Orleans, La., for plaintiffs.

Green, Gilmore, Crutcher, Rothpletz & Burke, Jerry C. Gilmore, Dallas, Tex., for McDonald.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, New Orleans, La., for Shady Brook and Brown Schools.

Johnston, Thornton & Pringle, James J. Thornton, Jr., Shreveport, La., for Summit Oaks Achievement Center, Inc.

Randall C. Jackson, of Jackson & Jackson, Abilene, Tex., for Abilene Youth Center, Inc.

Harper Walker, Administrator, Tyler, Tex., for East Texas Guidance Achievement Center, Inc.

Louis M. Jones, New Orleans, La., for State of La.

Long & Parker, Shelby K. Long, Port Arthur, Tex., for Hughen School.

ALVIN B. RUBIN, District Judge.

The award of attorneys fees to the plaintiffs in this case is authorized by recent congressional legislation, The Civil Rights Attorneys Fees Award Act of 1976, P.L. 94–559, and they will be granted in the amount stipulated by the parties.[1] This decision has been reached after full consideration of a number of issues.

## I. THE ELEVENTH AMENDMENT AND P.L. 94–559.

The Eleventh Amendment forbids a decree that would compel a state to pay damages to a private party. *Edelman v.*

---

1. Statement of Understanding and Joint Stipulation, filed December 27, 1976.

*Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).[2] But the Fourteenth Amendment succeeded the Eleventh and Section 5 of the Fourteenth Amendment gave Congress the power to enforce the Fourteenth Amendment "by appropriate legislation." Therefore, the Supreme Court held in *Fitzpatrick v. Bitzer,* 1976, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614, that Congress may enact legislation permitting damage recoveries against the states when such legislation is necessary to enforce the Fourteenth Amendment. Congress may deem that effectuation of the purposes of the Amendment requires that a state defendant may be held not only for actual damages in the traditional sense but also for the attorney's fees that are necessary in some instances to implement fully a Civil Rights action. In *Bitzer,* which involved the award of attorney's fees under Title VII of the Civil Rights Act, the Court recognized that a line of cases defining the parameters of Sec. five,

> as sanctioned intrusions by Congress, acting under the Civil War Amendments, into the judicial, executive, and legislative spheres of autonomy previously reserved to the States. The legislation considered in each case was grounded on the expansion of Congress' powers—with the corresponding diminution of state sovereignty—found to be intended by the Framers and made part of the Constitution . . . .

96 S.Ct. at 2671. Thus, ". . . the Eleventh Amendment, and the principle of state sovereignty which it embodies . . . are necessarily limited by the enforcement provisions of sec. 5 of the Fourteenth Amendment." Id.

**2.** Though this suit is brought against individuals, not against the state per se, it is, in effect "seeking to impose a liability which must be paid from public funds in the state treasury . . . ." *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1356. The individuals are being sued in their official capacities and not merely as private citizens.

> [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity

Congress, in enacting P.L. 94–599, considered 42 U.S.C. sec. 1983 as part of the enforcement mechanism of the Fourteenth Amendment.[3] The report of the House Judiciary Committee states: "Of course, the 11th Amendment is not a bar to the awarding of counsel fees against state governments. *Fitzpatrick v. Bitzer* (citation omitted)". H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. p. 7. Congressman Drinan, the author of the bill, said on the House floor shortly before passage of the bill:

> The question has been raised whether allowing fees against State governments in suits properly brought under the covered statutes would violate the 11th Amendment. That Amendment limits the power of the Federal courts to entertain actions against a state. This issue is no longer seriously in dispute after the recent Supreme Court decision in *Fitzpatrick against Bitzer.* Since this bill is enacted pursuant to the power of Congress under section 2 of the 13th Amendment and section 5 of the 14th Amendment, any question arising under the 11th Amendment is resolved in favor of awarding fees against State defendants.

122 Cong.Rec. 12160 (daily ed. Oct. 1, 1976).

It is true that part of the legal work of plaintiffs' counsel was devoted to the claim on behalf of ECA children, which this court resolved on statutory rather than constitutional issues. See, the Social Security Act, 42 U.S.C. § 608(f)(1).

▇▇▇ But § 1983 was enacted to protect citizens' federal rights, whether statutorily or constitutionally defined, from infringement by state officials.[4] The plaintiffs'

from suit even though individual officials are nominal defendants.
*Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, at 464, 65 S.Ct. 347, at 350, 89 L.Ed. 389 (1945).

**3.** Accord, *Wade v. Mississippi Cooperative Extension Service,* U.S.D.C.N.Miss., 424 F.Supp. 1242, 1976.

**4.** *City of Greenwood Mississippi v. Peacock,* 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944; *Gomez v. Florida State Employment Service,* 5 Cir. 1969, 417 F.2d 569.

federal statutory cause of action in *Gary W.* was brought as a § 1983 claim, not on the basis of general federal question jurisdiction. The essence of the plaintiffs' claims was that their *federal* rights had been violated by state officials acting under color of state law. Thus, their claims are part of the § 1983 mechanism designed to enforce the Fourteenth Amendment.

Moreover, it appears that Congress contemplated enforcement of the policies of the Fourteenth Amendment via P.L. 94–599 with regard to federal statutory rights.[5] Thus, there is no reason to distinguish between compensation for legal work accomplished on behalf of the ECA children and work accomplished on behalf of the DFS children.

## II. APPLICATION OF P.L. 94–599 to "PENDING CASES".

■ P.L. 94–599 expressly applies to "pending cases".[6] The defendants do not dispute that this case is still "pending" even though an opinion and order have been filed. (Def.'s brief, p. 2). The question is whether an award can be made only for those services rendered after the effective date of the enactment. In *Bradley v. Richmond School District*, 1974, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476, the court held that attorneys' fees might be awarded even though the statute authorizing recovery of attorneys fees, § 718 of the Emergency School Aid Act, was enacted after the date of judgment and during the appellate deliberations on the case.

The court in *Bradley* mentioned concern over "the impact of [a] change in law upon existing rights, or, to state it another way, . . . the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard," 416 U.S. at 720, 94 S.Ct. at 2020–2021. See *Thorpe v. Housing Authority of City of Durham*, 1969, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474. But it found that the defendant had always been subject to the possibility of a fees award based on a private attorney general theory or a finding of bad faith. Nor were new obligations imposed by the award:

> Even assuming a degree of uncertainty in the law at that time regarding the Board's constitutional obligations, there is no indication that the obligation under § 718, if known, rather than simply the common law availability of an award would have caused the Board to order its conduct so as to render this litigation unnecessary and thereby preclude the incurring of such costs.

416 U.S. at 722, 94 S.Ct. at 2021.

The same considerations apply here. Notwithstanding some uncertainty in the law on the right to treatment issue, there has been no showing that the attorneys' fees statute would have prompted different behavior by the defendants. It imposed no new legal obligation.[7] This does not mean that a case might not exist where retroactive application of an attorneys fees statute would impose a truly unforeseeable burden; this, however, is not such a case.

> In accordance with applicable decisions of the Supreme Court, the bill is intended to apply to all cases pending on the date of enactment as well as all future cases. *Bradley v. Richmond School Board* (citation omitted).

H.R. Report No. 94–1558, 94th Cong, 2d Sess. p. 4, n. 6.

**7.** See *Ferguson v. Winn Parish Police Jury*, 5 Cir. 1976, 528 F.2d 592 at 599, n. 13 where the court awarded attorneys fees in a Voting Rights Act suit challenging the apportionment of the police jury and the use of multi-member districts, a poorly marked legal territory in which the defendants might well have been unable to foresee the court's decision.

**5.** Congressman Drinan stated:

> [S]ection 1983 authorizes suits against State and local officials *based upon Federal statutory* as well as constitutional rights. For example, *Blue against Craig,* 505 F.2d 830, 4th Cir. 1974.

122 Cong.Rec. 12159 (daily ed. Oct. 1, 1976) (emphasis added).

Senator Kennedy in referring to the types of cases covered by the new Act discussed, *inter alia,* a Social Security Act case and stated: in each of these cases, the victim . . . had to go to court to enforce the rights promised *by Congress* or the Constitution. *Id.* at 17052 (emphasis added).

**6.** The House Judiciary Committee Report states:

*Bradley* has been interpreted to justify an award of attorneys' fees for previously rendered services by the 5th Circuit in *Thompson v. Madison County Board of Education*, 1974, 496 F.2d 782, at 690. See *Campbell v. Gadsen County District School Board*, 5 Cir. 1976, 534 F.2d 650, at 658.

Beyond the *Bradley* precedent for awarding statutorily authorized attorneys' fees for work accomplished prior to the effective date of the enactment, the legislative history of P.L. 94–599 supports the plaintiffs' construction of the statute. Congressman Drinan, sponsor of P.L. 94–599 stated

. . . this bill would apply to cases pending on the date of enactment. It is the settled rule that a change in statutory law is to be applied to cases in litigation. In *Bradley versus Richmond School Board*, the Supreme Court expressly applied that long-standing rule to an attorney fee provision, *including the award of fees for services rendered prior to the effective date of the statute. Id.* at 12160. (emphasis added).

## III. APPORTIONMENT OF "PREVAILING PARTY" BASIS.

It is presumed that the stipulation of counsel for plaintiffs and counsel for state-defendants obviates the need for apportionment of fees. The stipulation indicates the number of hours for which the plaintiffs are to be remunerated, and was entered into after the defendants briefed the "prevailing party" issue.

In any event, apportionment of the fees to each discrete issue in this complex litigation would be virtually impossible. Many issues were resolved between the parties by agreement after protracted discussion. The court therefore awards attorneys' fees consistent with the stipulation of the parties. If the state defendants still pursue their argument and can suggest a feasible method to the court for apportionment, together with legal authority that apportionment is warranted, they may apply for reconsideration.