Nazareth GATES et al., Plaintiffs-Appellees, Cross-Appellants,

and

United States of America, Plaintiff-Intervenor, Appellee,

v.

John COLLIER et al., Defendants-Appellants, Cross-Appellees.

No. 76–1549

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1977.

A. F. Summer, Atty. Gen., P. Roger Googe, Jr., Sp. Asst. Atty. Gen., Peter M. Stockett, Jr., Jackson, Miss., for defendants-appellants, cross-appellees.

Frank R. Parker, III, Jackson, Miss., Roy S. Haber, Boulder, Colo., for plaintiffs-appellees, cross-appellants.

Shawn F. Moore, Walter W. Barnett, Jessica Dunsay Silver, Attys., J. Stanley Pottinger, Asst. Atty. Gen., Civil Rights Div., Dept. of Justice, Washington, D. C., H. M. Ray, U. S. Atty., Oxford, Miss., for plaintiff-intervenor, appellee.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

This is, we may hope, the last appearance of this lengthy litigation challenging prison conditions in the Mississippi State Penitentiary.[1] We are here concerned only with the award of attorneys' fees. This appeal is

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

1. On September 13, 1972, the district court held that the operation of Parchman Penitentiary violated the constitutional rights of the inmates. 349 F.Supp. 881 (N.D.Miss.1972). The findings on the merits were affirmed at 501 F.2d 1291 (5th Cir. 1974).

On February 14, 1973, the district court awarded attorneys' fees on $41,750 and reimbursed plaintiffs' expenses of $10,986.05. This award was affirmed at 489 F.2d 298 (5th Cir. 1973). The intervening cases of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d

from the latest efforts of the district court to follow the shifting signposts in this uncharted area. Following our instructions to reconsider attorneys' fees in light of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the district court reaffirmed its prior award of reasonable attorneys' fees and costs [2] but denied plaintiffs any attorneys' fees or costs incurred in appellate proceedings. 70 F.R.D. 341 (N.D.Miss.1976). Both sides appealed. We determined to withhold disposition of the appeal pending a decision by the Supreme Court in *Stanton v. Bond,*[3] in which the Seventh Circuit had awarded attorneys' fees against state officials, in the absence of statutory authorization, based on a finding of bad faith. However, the recent Civil Rights Attorney's Fees Award Act amends 42 U.S.C. § 1988 (R.S. § 722) to provide the statutory authorization mandated by *Alyeska* and removes the necessity for conditioning an award of attorneys' fees in such cases as this on bad faith of defendants:

> In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[4]

P.L. 94–559, 90 Stat. 2641. Given this statutory authorization and the Supreme Court's decision to vacate and remand *Stanton v. Bond,*[5] we need only determine whether the new Act permits awards against state officials in their official capacities despite the proscription of the Eleventh Amendment,[6] as elucidated in *Edelman v. Jordan, supra.*

In *Edelman v. Jordan,* the Supreme Court overturned a retroactive award of wrongfully withheld welfare benefits holding that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." 415 U.S. at 663, 94 S.Ct. at 1356. The Court was careful to say that the Eleventh Amendment did not prohibit prospective injunctions even when such relief would require the expenditure of state revenues. "Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra.*" *Id.* at 668, 94 S.Ct. at 1358. Lower courts were left to wonder if attorneys' fees were akin to the monetary restitution prohibited by *Edelman* or were merely ancillary to injunctive relief. The Third and Sixth Circuits have held that the Eleventh Amend-

662 (1974), and *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), caused the Fifth Circuit sitting en banc to vacate and remand these judgments for reconsideration of attorneys' fees in light of these two decisions. 522 F.2d 81 (5th Cir. 1975) (en banc). The district court's reassessment of attorneys' fees following *Edelman* and *Alyeska* is the subject of this appeal. 70 F.R.D. 341 (N.D.Miss.1976).

2. 371 F.Supp. 1368.

3. 426 U.S. 905, 97 S.Ct. 2224, 48 L.Ed.2d 829 (1976), *granting cert.* in *Bond v. Stanton,* 528 F.2d 688 (7th Cir. 1976), an action to compel state officials to comply with an amendment to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396g.

4. Effective October 19, 1976. Revised Statute § 1977 refers to 42 U.S.C. § 1981; R.S. § 1978 refers to 42 U.S.C. § 1982; R.S. § 1979 refers to 42 U.S.C. § 1983; R.S. § 1980 refers to 42 U.S.C. § 1985; and R.S. § 1981 refers to 42 U.S.C. § 1986. This action was brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 (R.S. §§ 1977, 1979 and 1980).

5. The Supreme Court vacated and remanded for further consideration in light of Civil Rights Attorney's Fees Awards Act. 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1976).

6. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

ment prohibits the award of attorneys' fees against a state.[7] The First, Second and Fourth Circuits have found them to have only the ancillary effect on the state treasury permissible under *Edelman*.[8] All of these holdings predate the Supreme Court's holding in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), that an amendment to Title VII authorizing a federal court to award monetary damages to a private individual against a state government does not violate the Eleventh Amendment.

> [W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, see *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment. . . . We think that Congress may, in determining what is "appropriate legislation" for the purposes of enforcing the provisions of the Fourteenth Amendment, provide for private suits against states or state officials which are constitutionally impermissible in other contexts.

427 U.S. 445 at 456, 96 S.Ct. at 2671, 49 L.Ed.2d at 621–22. The Court went on to affirm the lower court's award of attorneys' fees against state officials, finding that they were expressly authorized by Congress in Title VII cases and that "Congress' exercise of power in this respect is also not barred by the Eleventh Amendment." *Id.*, 427 U.S. at 457, 96 S.Ct. at 2672, 49 L.Ed.2d at 622.

The Civil Rights Attorney's Fees Awards Act of 1976 was enacted pursuant to Congress' powers under the Fourteenth Amendment, § 5, and specifically contemplates state officials as intended defendants:

> As with cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of

1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. Congress expressly intended the new act to apply to all cases pending at the time of its enactment.[9] H.R. No. 1558 at 4, n.6, 94th Cong., 2d Sess. (1976). *See also Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), our court concluded that "[t]he combination of *Fitzpatrick* and the Civil Rights Attorney's Fees Awards Act of 1976 establishes that the Eleventh Amendment is no longer a bar to the award of attorney's fees against a state in actions under the statutes enumerated in the Act." *Id.* at 675.

Nor does *Muzquiz v. City of San Antonio*, 528 F.2d 499 (5th Cir. 1976) (en banc), prevent the award of attorneys' fees against state officials in their official capacities. In its narrowest reading *Muzquiz* held that § 1983 injunctive relief tantamount to a money judgment for restitution does not lie against individual members of a governmental entity in their official capacities when the entity itself is not a person for § 1983 purposes. Post-*Muzquiz* decisions of this court have recognized § 1983 jurisdiction against individual members of a governmental board in their official capacities when injunctive or declaratory relief was sought. *Campbell v. Gadsden County District School Board*, 534 F.2d 650 (5th Cir.

---

7. *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31 (3d Cir. 1974); *Jordon v. Gilligan*, 500 F.2d 701 (6th Cir. 1974).

8. *Boston Chapter NAACP, Inc. v. Beecher*, 504 F.2d 1017 (1st Cir. 1974); *Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975); *Class v. Norton*, 505 F.2d 123 (2d Cir. 1974); *Jordan v. Fusari*, 496 F.2d 646 (2d Cir. 1974); *Thonen v. Jenkins*, 517 F.2d 3 (4th Cir. 1975).

9. A motion to recommit the bill in order to limit its coverage of pending cases was defeated in the House of Representatives 268 to 104. 12 Cong.Rec.H. 12166.

1976); *McGill v. Parsons,* 532 F.2d 484, 485–86 n.1 (5th Cir. 1976); *Thurston v. Dekle,* 531 F.2d 1264 (5th Cir. 1976). The question of attorneys' fees against official defendants after *Muzquiz* was specifically pretermitted in *Abbott v. Thetford,* 529 F.2d 695, 701 (5th Cir. 1976). In light of the Supreme Court's holdings in *Bradley* and *Fitzpatrick* and the clear congressional directive to allow attorneys' fees to be awarded in civil rights cases, we choose not to interpret *Muzquiz* so expansively as to challenge such formidable authority.

The award of $41,750 for reasonable attorneys' fees and $10,986.05 for reimbursable expenses, plus interest from the date of judgment, is affirmed. The denial of attorneys' fees for appellate proceedings is reversed and the case is remanded with instructions to award reasonable attorneys' fees for post-judgment proceedings as authorized by the Civil Rights Attorney's Fees Awards Act of 1976.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

COLEMAN, Circuit Judge, concurring.

I concur in the award of $41,750 for attorneys' fees and $10,986.05 for reimbursable expenses, but I do so only because Congress has seen fit to require it.

I also concur in the remand for the purpose of allowing the District Court to consider an award, in its discretion, of reasonable attorneys' fees for post-judgment proceedings. Speaking for myself only I do not mean to infer that attorneys are mandatorily entitled to be paid for time and effort expended to ascertain the amount of, or to collect, a fee. That is primarily for their benefit, not for the benefit of the in forma pauperis plaintiffs. The opinion does not speak to this subject but I wish to state my awareness of the point, which is now left for the initial consideration and decision of the District Court.