**GARY W. et al.**

v.

**STATE OF LOUISIANA et al.**

Civ. A. No. 74-2412.

United States District Court, E. D. Louisiana.

Oct. 25, 1977.

As Amended Oct. 31, 1977.

William E. Rittenberg, New Orleans, La., Stephen P. Berzon and Daniel Yohalem, Washington, D.C., for plaintiffs.

Carmack M. Blackmon, Baton Rouge, La., for State of Louisiana.

ALVIN B. RUBIN,* Circuit Judge:

The plaintiffs, who have obtained a final judgment for their attorneys' fees against the State of Louisiana, now seek to execute on that judgment. The state filed no appeal from the judgment, and concedes that it is final, but urges that the judgment is in effect uncollectible until the state chooses to pay it. Because the statute of the Congress that controls this action, adopted conformably to the Constitution, is the supreme law of the land, it is the duty of this court to enforce that law and to order the judgment satisfied.

## I

On February 3, 1977, following extensive briefing and oral argument, this court ruled that the plaintiffs are entitled to attorneys' fees under the Civil Rights Attorneys' Fees Act of 1976, 90 Stat. 2641, 42 U.S.C.A. § 1988. *Gary W. v. State of Louisiana,* E.D.La.1977, 429 F.Supp. 711. On March 15, 1977, a judgment against the state defendants was entered in accordance with that opinion. Paragraphs 4 through 6[1] of that judgment ordered the Louisiana Department of Health and Human Resources (DHHR) to pay the plaintiffs' court costs and reasonable attorneys' fees.

The state defendants did not appeal the court's judgment. The time for appeal has long since passed. However, despite the plaintiffs' demands for payment, the state defendants have not complied with the judgment entered against them. The Louisiana State Legislature voted this summer not to appropriate funds sufficient to pay the plaintiffs' court costs and attorneys' fees as this court ordered over six months ago.

The state defendants now seek relief from the March 15 judgment, while the plaintiffs seek to enforce it.

## II

The state defendants seek relief from judgment under Rule 60(b)(1), Fed.R. Civ.Proc., which permits a court to relieve a party of a final judgment against it on grounds of "mistake, inadvertence, surprise, or excusable neglect." The state takes the position that the court mistakenly, inadvertently, or by excusable neglect failed to consider the discretionary nature of attorneys' fees awarded under 42 U.S.C.A. § 1988.

When the issue was first presented in this court, the state did not offer in evidence any facts that would justify the denial of attorneys' fees to the plaintiff. It filed a brief contending that attorneys' fees should not be granted because the state defendants were not in bad faith. This had been the principle applied in *Alyeska Pipeline Service Company v. The Wilderness Society,* 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, but the *Alyeska* rule was changed by Congress when it enacted Public Law 94–559, amending 42 U.S.C.A. § 1988. The only other defenses asserted were the applicability of the Eleventh Amendment, the inapplicability of Public Law 94–559 because it was enacted after this suit was filed, and the claim that the attorneys' fees should be mitigated because the plaintiffs

---

* Sitting as District Judge by designation of Chief Judge John R. Brown.

1. Paragraphs 4 through 6 read as follows:
   4. The Department of Health and Human Resources shall pay the Children's Defense Fund of the Washington Research Project $174,519.88 for attorneys' fees and litigation expenses incurred through December 22, 1976, together with interest at the legal rate from date of Judgment.

5. The Department of Health and Human Resources shall pay William Rittenberg $30,-397 for attorney's fees incurred through December 22, 1976, together with interest at the legal rate from date of Judgment.
6. The Department of Health and Human Resources shall pay the court costs of plaintiffs and plaintiff-intervenor as taxed by the clerk of the court.

did not succeed in proving every issue they had raised initially. Those defenses were likewise discussed in the prior opinion. The state never contended, nor did it ever offer any evidence to show, that the court should, in the light of the principles embodied in Public Law 94–559, refuse to allow attorneys' fees. While the state now contends that the award of attorneys' fees was erroneous under the terms of that statute, it offers no evidence to support that conclusion.

The Fifth Circuit has recently announced the standard to guide discretion in awarding attorneys' fees under 42 U.S.C.A. § 1988. In *Brown v. Culpepper*, 5th Cir. 1977, 559 F.2d 274, the court said that a plaintiff in such an action, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Brown, supra*, 559 F.2d at 277. This was the rule adopted by the Supreme Court with respect to Title II of the Civil Rights Act of 1964, 78 Stat. 244, 42 U.S.C.A. § 2000a–3, in *Newman v. Piggie Park Enterprises*, 1968, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263.

The state defendants have offered no evidence of special circumstances that would render the March 15 judgment unjust. *Cf. Northcross v. Board of Ed. of the Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). The award was not predicated on a finding of bad faith. It was based on the thesis, since adopted in *Brown*, that Congress intended an award to be made unless there were special circumstances making the award unjust. Therefore, the defendants' motion for relief from judgment must be denied.

### III

The next group of issues deals with the alleged procedural barriers to enforcement of the order. Faced with the state defendants' refusal to comply with the court's March 15 judgment, the plaintiffs have caused a writ of fieri facias to be issued to the United States Marshal for the Eastern District of Louisiana commanding him to seize the:

. . . rights and credits of the Louisiana Department of Health and Human Resources, particularly funds under the control of said Department deposited in the American Bank and Trust of Baton Rouge . . .

in an amount sufficient to satisfy that judgment. Plaintiffs now seek to execute that writ under Rule 69(a), Fed.R.Civ.Proc., by petitioning to make American Bank and Trust a garnishee in these proceedings; in the alternative, plaintiffs move for an order under Rule 70, Fed.R.Civ.Proc., directing the DHHR to pay the March 15 judgment, plus such additional fees and expenses as plaintiffs have incurred in securing compliance with that judgment. The state defendants, in turn, have moved to quash the writ.

The state defendants maintain that the plaintiffs are not entitled to execution under Rule 69(a), or to a Rule 70 order directing compliance with the March 15 judgment. The state's position is set forth in the following series of hypotheses:

1. The court cannot order the payment of a money judgment under Rule 70 because that rule concerns only the "performance of specific acts."

2. Consequently, any relief must be ordered under the terms of Rule 69.

3. Rule 69(a) provides that the procedure on execution or in aid of execution "shall be in accordance with the practice and procedure of the state in which the district court is held, . . . except any statute of the United States governs to the extent that it is applicable."

4. Because no federal statute prescribes a garnishment procedure, DHHR funds may be seized only in accordance with the "practice and procedure" of the State of Louisiana.

5. The "practice and procedure" of Louisiana includes art. XII, § 10(C) of the 1974 Constitution of the State of Louisiana, which provides:

The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide

for the effect of a judgment, but no public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.

6. Because Louisiana law proscribes the seizure of public agency funds, relief cannot be awarded under Rule 69.

The court has parsed the state defendants' argument in detail because it is a delicately wrought chain of apparent logic that leads to an ineluctably wrong conclusion. The defendants would have the court read the Federal Rules of Civil Procedure in such fashion as to permit Louisiana or any other state to ignore a federal judgment against it merely by enacting a statute prohibiting the garnishment of state funds. If the State of Louisiana may be relieved from satisfying this judgment by a provision enacted in the past, albeit for a different purpose, and embedded in the Constitution, then any other state may achieve the same result.

■ The issue here is not one of judicial confrontation with the state. It is one of implementation of a Congressional mandate. Following the decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 1975, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141, the Congress might have chosen to take no legislative action. Or it might have decided to broaden the basis for an award of attorneys' fees against private litigants but not to permit their recovery from the states. Instead it chose to enact legislation granting the right to recover attorneys' fees against all litigants as a means of strengthening its efforts to protect individual rights under the powers conferred by Section 5 of the Fourteenth Amendment to the Constitution. When Congress determines to act pursuant to the powers conferred on it by the Fourteenth Amendment, its enactments take precedence over the laws of the states. Neither state law nor the Eleventh Amendment protects states from suits under such laws. *Fitzpatrick v. Bitzer*, 1976, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614.

■ Although Congress has spoken clearly, the state defendants in effect contend that a judgment against a state pursuant to the statutory command is merely hortatory, and the state may elect not to satisfy it. But the statutes of the Congress and the judgments of the federal courts enforcing them are not precatory. They are, as the Constitution declares, the supreme law of the land. U.S.Const. art. VI.

The Fifth Circuit has recently upheld an order issued under Rule 70 that directed state defendants to pay a money judgment. In *Gates v. Collier*, 5th Cir., 1977, 559 F.2d 241, the court directed the payment of attorneys' fees to successful plaintiffs under 42 U.S.C.A. § 1988, the statute involved here. This is a recent, fully considered construction. This trial court would be bound by that interpretation even were its views different. *Gates* is authority both for the award of attorneys' fees against the state, and for the propriety of using Rule 70 for such a monetary allowance.

■ The same procedure was approved in *Gilbert v. Johnson*, 5th Cir. 1974, 490 F.2d 827, where the court held that the plaintiff properly sought monetary relief for unlawful dismissal from his position with a Veterans Administration Hospital under Rule 70. *Cf., Finney v. Hutto*, 8th Cir. 1977, 548 F.2d 740. These cases indicate that Rule 70 may be used as a means to collect a money judgment rendered in an equitable proceeding. Consequently, the relief the plaintiffs seek is permissible under Rule 70.

■ The difficult problems of construing Rule 69 need not be faced because relief is available under Rule 70. However, perhaps supererogatorily, those problems will be discussed so that the appellate court will have my views before it should that court reach the issue. Rule 69(a) provides, in part:

The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the

state in which the district court is held, . . . except that any statute of the United States governs to the extent that it is applicable.

The defendants correctly insist that the state "practice and procedure" to which Rule 69(a) refers includes state exceptions of particular property from execution, such as Louisiana's constitutional proscription against the seizure of public funds. La. Const. art. XII, § 10(c). But if a federal statute is applicable, federal statutory exemptions govern execution practice, Drafter's Committee Note of 1937 to Rule 69(a), 7 Moore's Federal Practice ¶ 69.01[2] (2d Ed. 1975). It would be anomalous to interpret the rule so that an applicable federal statute imports the federal exemptions of property from execution, while the state "practice and procedure" referred to in the same sentence does not include the protection of state exemptions. *Cf., United States v. Miller*, 3d Cir. 1956, 229 F.2d 839.

If the plaintiff relies on the state procedure, the state exemption is applicable. On the other hand, if the provisions of 42 U.S.C.A. § 1988 are applicable, then that "statute of the United States governs." It is literally true that § 1988 says nothing about the means of collecting the attorneys' fees it authorizes. Further, those federal statutes cited by the 1937 committee as controlling under Rule 69 speak of execution directly, while § 1988 does not.

■■■ However, a remedial statute should not be read as if it were a lexicon for scriveners. "The duty of ascertaining [an enacted law's] meaning is difficult enough at best, and one certain way of missing it is by reading it literally . . . ." Address by Judge Learned Hand, April 10, 1959, in Leflar, Appellate Judicial Opinions 73 (1974). While § 1988 does not mention the method of its enforcement, the origin and purpose of the 1976 amendment suggest that Congress intended both to create the entitlement to the fees and to provide a means of enforcing this remedy. The statute was adopted to provide attorneys' fees in situations where they were not available under the *Alyeska* rule. It was intended to

apply to states and state officials. And it was intended to be effective against them, not to be hortatory. The Senate report recites:

As with the cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of 1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, *will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).*

S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News, 1976, pp. 5908, 5913. (Emphasis added.) Within the last month, the Fifth Circuit has twice held that judicial interpretation of § 1988 is to be guided by this passage. *Gates, supra,* at 243; *Universal Amusement Company v. Vance,* 5th Cir. 1977, 559 F.2d 1286, at 1301 & n. 36. See also, *Finney v. Hutto,* 8th Cir. 1977, 548 F.2d 740, 742. The evident purpose of the statute compels us to construe § 1988, not state procedure, as being applicable for purposes of Rule 69.

This conclusion is buttressed by the history of Rule 69. That rule was originally drafted to follow 28 U.S.C. § 729 (1940), a statutory predecessor to 42 U.S.C. § 1988. 7 Moore's Federal Practice ¶ 69.01[2] (2d Ed. 1975). At that time § 1988 said nothing about attorneys' fees but provided merely:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes

of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

It then specifically contemplated that state and federal law would play complementary roles in securing civil rights. It is reasonable to believe that, in amending § 1988, Congress intended to alter those respective roles, and to give extra encouragement to plaintiffs who seek to enforce civil rights in federal courts. Congress thus gave further emphasis to the federal interest in civil rights enforcement. The same federal interest that led to the creation of the right must extend to an adequate means of enforcing it. Construing Rule 69 to permit the recovery of attorneys' fees against states notwithstanding a state proscription against the seizure of public funds is consistent with that interpretation.

Conversely, state procedure was held to govern federal execution of judgments in cases where there was no significant federal interest in the remedy. In *Yazell v. United States*, 1966, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 *aff'g, United States v. Yazell*, 5th Cir. 1964, 334 F.2d 454, the Supreme Court held that the law of coverture in Texas precluded the United States from collecting on a Small Business Administration disaster loan from the separate property of the debtor wife. The court said:

> We do not here consider the question of the constitutional power of Congress to override state law in these circumstances by direct legislation . . . .. We decide only that this Court, in the absence of specific congressional action, should not decree in this situation that implementation of federal interests requires overriding the particular state rule involved here.

382 U.S. at 352, 86 S.Ct. at 506.

Here, however, Congress has acted. *Cf., Huddleston v. Dwyer*, 1944, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 holding that state law controls the question whether a county must levy a tax to pay off bonds on a cause of action arising under state law.

The plaintiffs have stated in oral argument that they have no preference with respect to the type of relief granted, while the state defendants have stated that, if relief is to be granted, they would prefer an order issue pursuant to Rule 70.

State defendants were given an opportunity, even after these motions were heard, to suggest a manner in which they would satisfy the judgment. But they have not offered any kind of compliance with the judgment, direct or indirect, soon or after an interval. This court would not be fulfilling its duty if it failed to enforce the constitutional statutes of the Congress. Pursuant to that duty, it grants the plaintiffs the relief they seek in accordance with the procedure set forth in Rule 70.

IV

In accordance with this opinion, an order shall issue directing state defendants to pay plaintiffs' attorneys from DHHR funds those fees and costs specified in the March 15, 1977 judgment, plus interest.

In addition, the plaintiffs seek attorneys' fees and costs to compensate them for the present action to enforce the March 15 judgment. The Fifth Circuit Court of Appeals has not decided whether such relief is available on facts such as those before the court. The Court of Appeals has, however, held that an award of attorneys' fees under Title II of the Civil Rights Act of 1964, *supra*, may include compensation for the defense of an appeal on the propriety of attorneys' fees. *Miller v. Amusement Enterprises*, 5th Cir. 1970, 426 F.2d 534, 539. The state defendants here have contested the plaintiffs' right to attorneys' fees through resistance, rather than appeal. The cost of overcoming that resistance, like the cost of defending an appeal successful-

ly, is rightly compensable under 42 U.S.C.A. § 1988, the terms of which are identical to the provisions regarding attorneys' fees in Title II.

The parties have stipulated that, if this amount is recoverable, the sum due is $2,322.00 to the Children's Defense Fund, and $1,000.00 to William Rittenberg. These amounts will be added to the judgment.