**Ronald BOWMAN, et al.**

v.

**CITY OF NEW ORLEANS, et al.**

**Civ. A. No. 86–596.**

United States District Court, E.D. Louisiana.

Nov. 9, 1989.

---

Mary E. Howell, New Orleans, La., for plaintiffs.

Reginald J. Laurent, New Orleans, La., for defendants.

McNAMARA, District Judge.

Before the court is the Motion of Judgment Debtor, the City of New Orleans (the City), et al., for Stay and to Quash Writ of Execution. After conducting a telephone conference on October 5, 1989, the court declined to stay proceedings incident to the execution of Plaintiffs' judgment, but, with agreement of counsel, directed that no property be seized pending further order of this court.[1] The court granted Plaintiffs' counsel until October 16, 1989, to respond to the City's Motion. Having received and reviewed this response, the court is now prepared to rule on the Motion without oral argument.

The instant dispute arises from Plaintiffs' efforts to collect the unpaid balance of a partially satisfied Consent Judgment against the City. The Consent Judgment, rendered by the court and entered on September 25, 1986 (Document No. 26), stems from a Complaint that challenged the constitutionality of City Ordinance No. 11036.[2]

Named defendants in this Complaint were the City; Ernest Morial, individually and as Mayor of the City; Mike Early, individually and as a member of the City Council; and Warren Woodfork, individually and as Superintendent of Police of the City.

By the terms of the Consent Judgment, Defendants admitted that Ordinance No. 11036 is unconstitutional because it violates the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Defendants agreed to being permanently enjoined from enforcing the Ordinance and further agreed to pay reasonable attorneys' fees[3] in the amount of $6,330.00 and costs of $500.05. The Consent Judgment stipulated that fees and costs were due and payable on February 1, 1987, that legal interest would run from February 1, 1987, until paid, and that the Judgment for fees and costs would become executory on February 1, 1987. The City failed to satisfy the Consent Judgment by February 1, 1987.

On April 22, 1988, Plaintiffs' counsel notified the court that partial payment in the amount of $6,830.05 had been received.[4] Because interest began accruing on February 1, 1987, this amount was insufficient to constitute full satisfaction of the Consent Judgment. As of June 28, 1989, the City had still not satisfied the Consent Judgment. Consequently, Plaintiffs' counsel filed a Judgment Debtor Rule and, subsequently, requested that the Clerk of this Court issue a Writ of Fieri Facias (FIFA) commanding the United States Marshal to

---

1. *See* Minute Entry dated October 5, 1989 (Document No. 56).

2. The Ordinance banned music performances and other street entertainment conducted for commercial purposes or to solicit donations from the public on the streets and sidewalks of the Vieux Carre during the 1986 Mardi Gras weekend. The original Complaint was filed on behalf of five named plaintiffs who asserted that they were street performers facing a substantial and immediate threat of arrest and prosecution. The named plaintiffs also sought to sue as representatives of a class of similarly situated people.

The Complaint alleged violations of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1331, 1343, 2201, and 2202

*only.* Contrary to the City's assertion, the Complaint did not allege violations of Louisiana tort law.

3. 42 U.S.C. § 1988 authorizes the awarding of attorneys' fees to successful civil rights litigants.

4. *See* Partial Satisfaction of Judgment, Document No. 27. Documents submitted to the court by the City indicate that on March 9, 1988, the City paid $4,860.00 in partial satisfaction of the Consent Judgment. Presumably, this amount represents the compensation due Mary E. Howell for 40.5 hours of work at $120.00 per hour. Reviewing the documents submitted, the court is unable to ascertain when the City paid costs amounting to $500.05 and compensation due Pamela J. Bayer amounting to $1,470.00 (12.25 hours at $120.00 per hour).

seize and sell property of the City sufficient to satisfy the outstanding debt owed pursuant to the Consent Judgment.[5] The City now seeks to quash the writ of execution (FIFA) issued by the Clerk on October 4, 1989.

Arguing that this court erred in allowing any proceedings in aid of execution of the Consent Judgment, the City steadfastly maintains that federal courts are powerless to authorize a judgment creditor to execute a judgment against property or funds belonging to the State of Louisiana or its political subdivisions unless the governing body of the state or municipality has appropriated the funds to satisfy the judgment. This argument rests on the premise that federal courts may not enforce collection procedures that contravene restrictions established by state law. Vital to the City's position is its interpretation of Federal Rule of Civil Procedure 69, an interpretation which the court determines to be misguided.

Federal Rule of Civil Procedure 69 provides in part:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs other-

wise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

The City places great emphasis on the language "proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held." Consequently, it argues that the substantive provisions contained in Article 12, Section 10(C) of the Louisiana Constitution and Louisiana Revised Statute Section 13:5109,[6] both of which exempt public property from seizure and require that money judgments against the state or any of its political subdivisions be satisfied only from specially appropriated funds, operate to restrict federal courts from ordering the seizure of public property to satisfy its judgments.[7] Case Law emanating from the Federal Fifth Circuit unquestionably contradicts the City's position.

---

**5.** Plaintiffs' counsel complied with Federal Rule of Civil Procedure 69, which directs that "proceedings on and in aid of execution [of judgment] shall be in accordance with the *practice and procedure of the state in which the district court is held.*" Fed.R.Civ.P. 69 (emphasis added). The City's Motion to Quash Judgment Debtor Rule was denied by Magistrate Chasez on July 25, 1989. Upon review, this court upheld the Magistrate's ruling. *Subsequently,* this court denied the City's Motion to Stay the Judgment Debtor Examination, and the City was equally unsuccessful in seeking a stay from the Fifth Circuit Court of Appeals pending appeal of this court's Order requiring the City to submit to a judgment debtor examination.

**6.** La. Const. art. 12, § 10(C) provides in part: "No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefore by the Legislature or by the political subdivision against which the judgment is rendered." Similarly, La.Rev.Stat.Ann. § 13:5109(B)(2) (West Supp.1989) provides:

Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in

favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only out of funds appropriated for that purpose by the Legislature, if the suit was filed against the state or state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

**7.** Although the City urges with equal vigor that the plan pursuant to which it pays judgments rendered against it is fair, reasonable, and workable, the court need not and will not address this argument. The issue presently before the court is not whether the City's plan is constitutional, but whether Federal Rule of Civil Procedure 69, in conjunction with Louisiana law exempting public property from seizure, imposes restrictions upon the authority of the court to enforce its Consent Judgment awarding attorneys' fees and costs pursuant to 42 U.S.C. § 1988. Nevertheless, while the court intimates no view as to the constitutionality of the City's plan, certainly state legislatures and municipal councils are not at liberty simply to underallocate funds sufficient to satisfy its outstanding judgments and thereby thwart the ability of federal courts to carry forth congressional mandates.

The Fifth Circuit has had more than one occasion to visit this issue, but has thus far addressed it only in dicta. In *Gates v. Collier*, 616 F.2d 1268 (5th Cir.1980), the court confronted a similar situation involving a Mississippi law that required legislative appropriation of funds to satisfy money judgments rendered against the state. As in the instant case, the judgments sought to be enforced in *Gates* awarded attorneys' fees pursuant to 42 U.S.C. § 1988. The district court directed that

> Mississippi's Auditor and Treasurer be added as defendants and that the other defendants submit a requisition to the Auditor for the issuance of a warrant upon the Treasurer to satisfy the judgment out of funds appropriated for the operation of Parchman [Penitentiary] [8] or out of any other funds subject to the control of the treasurer.

616 F.2d at 1270. On appeal, the Fifth Circuit upheld the district court's order. The Fifth Circuit determined that the district court "acted well within its authority to ensure compliance with its lawful orders," *id.* at 1271, noting that if statutory authority were needed for the district court's actions, such authority may be found in Federal Rule of Civil Procedure 70.[9]

Acknowledging that the legislative history of 42 U.S.C. § 1988 neglected to address the question of how to make an unwilling state or its officials satisfy a judgment awarding attorneys' fees, the *Gates* court suggested that "Congress assumed it ... unnecessary to consider the subject because the Federal Rules of Civil Procedure contains a provision for the execution of district court judgments." 616 F.2d at 1271 (citing Fed.R.Civ.P. 69). Nonetheless, the decision in *Gates* appears to rely not on

any specific statutory authority, but rather on the court's general authority to enforce its judgments.[10] Indeed, in rebuking the argument by the defendants that they cannot be required to violate Mississippi law, the court determined that the defendants had misconceived the issue:

> "The issue here is not one of judicial confrontation with the state. It is one of *implementation of a Congressional mandate.*" ... Congress has declared that states and their officials who violate federal civil rights laws must reimburse the successful plaintiffs for costs incurred in seeking redress. To strike down the order in this case because it conflicts with the laws of Mississippi would be no different than reversing a bare judgment for attorneys' fees. In either case, we would be allowing the state, by legislative action, to recloak itself with the Eleventh Amendment immunity which Congress has chosen to remove. Such a result would be contrary to the command of the supremacy clause of the United States Constitution.

*Id.* at 1272 (quoting *Gary W. v. State*, 441 F.Supp. 1121, 1125 (E.D.La.1977)) (emphasis supplied by the *Gates* court).

Citing its decision in *Gates*, the Fifth Circuit likewise rejected the argument that Louisiana law restricts the authority of federal courts to order the satisfaction of its judgments. *Gary W. v. State of Louisiana*, 622 F.2d 804 (5th Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). The plaintiffs in *Gary W.* sought to execute a writ of fieri facias, but alternatively sought an order under Federal Rule of Civil Procedure 70 directing the Louisiana Department of Health and Human Resources to pay their judgment. As in the instant case, the defen-

---

8. The underlying litigation arose over conditions at the prison.

9. Rule 70 states in pertinent part:
   If a judgment directs a party to ... perform any ... specified act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person.... The court may also in proper cases adjudge the party in contempt.

Fed.R.Civ.P. 70.

10. "The opinion in *Gates* leaves the reader with the distinct impression that the court would have reached the same result under the general authority of the district court to enforce its judgments without regard to any specific statutory authorization." *Balark v. Curtin*, 655 F.2d 798, 801 (7th Cir.1981).

dants moved to quash the writ. The district court granted plaintiffs' alternative request for relief, pretermitting what the court characterized as "[t]he difficult problems of construing Rule 69." *Gary W.,* 441 F.Supp. at 1125. Nonetheless, Circuit Judge Alvin Rubin, sitting by designation, embarked on a discussion of Rule 69 which concluded that 42 U.S.C. § 1988, not state procedure, is applicable for purposes of Rule 69. This court perceives the conclusion to be well-founded.

Recognizing that § 1988 says nothing about the means of collecting attorneys' fees, Judge Rubin reasoned that a "remedial statute should not be read as if it were a lexicon for scriveners." 441 F.Supp. at 1126. He proceeded to quote the legislative history of § 1988:

> As with the cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of 1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorney's fees, like other items of costs, *will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).*

*Id.* (quoting S.Rep.No. 1011, 94th Cong., 2d Sess. 3, 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913) (emphasis supplied by the *Gary W.* court). Significantly, the Fifth Circuit has held that judicial interpretation of § 1988 is to be guided by this passage. *Gates v. Collier,* 559 F.2d 241, 243 (5th Cir.1977); *Universal Amusement Co. v. Vance,* 559 F.2d 1286, 1301 & n. 36 (5th Cir.1977). Ultimately Judge Rubin resolved that "[t]he same federal interest that led to the creation of the right [to recover attorneys' fees] must extend to an adequate means of enforcing it. Construing Rule 69 to permit the recovery of attorneys' fees against States notwithstanding a State proscription against the seizure of public funds is consistent with that interpretation." 441 F.Supp. at 1127.

While the court expresses no opinion as to the limitations that "State practice and procedure"—imported via Rule 69—impose on the power and authority of a federal court to enforce its judgments, no such limitations exist to bar the court from ordering execution of a writ of FIFA to satisfy a judgment awarding attorneys' fees pursuant to 42 U.S.C. § 1988. Moreover, the court rejects the City's argument that the Consent Judgment is not enforceable as an award of attorneys' fees pursuant to § 1988. *See Collins v. Thomas,* 649 F.2d 1203 (5th Cir. Unit A 1981).

For the foregoing reasons, IT IS ORDERED that the City's Motion for Stay and to Quash Writ of Execution should be and it is hereby DENIED, and the court's Order of October 5, 1989, prohibiting the seizure of property is hereby VACATED.