Henry PRESTON, et al., Plaintiffs,

v.

James THOMPSON, et al., Defendants.

PRISONERS OF PONTIAC, et al., Plaintiffs,

v.

James THOMPSON, et al., Defendants.

Nos. 78 C 3512, 78 C 3006.

United States District Court, N.D. Illinois, E.D.

March 29, 1983.

G. Flint Taylor, Jr., Chicago, Ill., Jan Susler, Carbondale, Ill., David Thomas, Shelley Bannister, Chicago, Ill., for plaintiffs.

Patricia J. Bornor, Legal Counsel, Illinois Dept. of Corrections, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

These actions arose from "deadlocks" imposed by Illinois corrections officials at the Pontiac and Stateville prisons immediately following a violent disturbance by Pontiac inmates in July 1978. In *Prisoners of Pontiac Correctional Center v. Thompson,* No. 78 C 3006 (N.D.Ill. filed July 27, 1978), plaintiffs challenged the loss of attorney—inmate contact caused by the deadlocks. In late July 1978, former district judge John Powers Crowley granted plaintiffs' request for a temporary restraining order requiring defendants to permit Pontiac inmates to meet with their lawyers. After several more weeks of the deadlocks, *Preston v. Thompson,* No. 78 C 3512 (N.D.Ill. filed August 31, 1978) was filed, and the second phase of the litigation began. In *Preston,* plaintiffs challenged the continued maintenance of the deadlocks. After holding protracted evidentiary hearings, Judge Crowley granted extensive preliminary injunctive relief. The scope of this relief is described in *Preston v. Thompson,* 589 F.2d 300 (7th Cir.1978), in which the court of appeals affirmed the preliminary injunctive order.

Through 1979, 1980, and early 1981, Judge Crowley monitored defendants' compliance with the preliminary injunction. The injunction was made final on June 30, 1981, Judge Crowley's last day on the bench. *Preston v. Thompson,* No. 78 C 3512 (N.D.Ill. June 30, 1981). The final order awarded plaintiffs' attorneys $101,000 in attorney's fees under 42 U.S.C. § 1988 (1976 & Supp. IV 1980). This award was affirmed by the court of appeals in an unpublished order. *Preston v. Thompson,* 681 F.2d 821 (7th Cir.1982).

On June 17, 1982, plaintiffs moved this court for a "turnover order" requiring defendants to pay the $101,000 in attorney's fees, $3,322.73 in costs awarded by Judge Crowley, and post judgment interest that had accrued since June 30, 1981.[1] In response to that motion, defendants agreed that they would stipulate to the principal amount of the judgment if plaintiffs would agree to pursue payment in the Illinois Court of Claims rather than in this court. Plaintiffs agreed, and a stipulated complaint was filed in the Illinois Court of Claims on June 23, 1982. That court acted promptly. On June 25, 1982, it entered judgment in the amount of $104,322.73. Pursuant to the procedure normally followed in Illinois when the Court of Claims

---

1. We heard the motion as emergency judge. The case was assigned to us permanently on

August 6, 1982.

approves an award against the state,[2] the award was included in a special appropriations bill, and the General Assembly approved it on July 2, 1982. Governor Thompson signed the bill on September 12, 1982, and plaintiffs' attorneys received a check in the mail on September 30. Thus, approximately four months passed from the date the court of appeals affirmed Judge Crowley's order to the date on which plaintiffs' attorneys were paid.

What remains to be decided is the question of interest on the attorney's fees award. As noted above, plaintiffs' June 17, 1982 motion for a "turnover order" included post-judgment interest on Judge Crowley's award. Defendants refused to stipulate to this interest in the Court of Claims. At the hearing on plaintiffs' motion for a turnover order, held on June 24, 1982, the following exchange occurred: [3]

MR. TAYLOR [plaintiffs' attorney]: ... we are in conflict, and the other side would not agree to stipulate to it in the Court of Claims or to concede, that six percent interest per annum as provided by the statute is due and payable.

THE COURT: Which statute?

MR. TAYLOR: Illinois Revised, I believe it's 74(3), and also under 28 U.S.C. 1961, both of which we interpret as mandatory interest provisions and, of course, Bonner v. Coughlin as well.

MS. BORNOR [defendants' attorney]: Should that interest issue, though, be raised before a court, either before the Seventh Circuit, as there is no remand yet, or before a District Court, we would request the opportunity to brief that issue as there are Illinois Supreme Court cases construing Illinois law to say that interest indeed would not apply or may not apply to a governmental entity. So we would simply request a briefing on that.

MR. TAYLOR: So we got the supremacy clause right back at us again.

2. This procedure will be discussed more fully *infra.*

3. At the time of the hearing, the case was before this court as emergency judge, due to

After that hearing, plaintiffs apparently persisted in their attempt to obtain defendants' agreement to stipulate to the interest in the Court of Claims. *See* Plaintiffs' Renewed Motion for a Turnover Order on the Issue of Interest, Ex. A (July 12, 1982 letter from plaintiffs' counsel to defendants' counsel). They state that defendants refused to pay.

While defendants admit that they have not paid the interest claimed by plaintiffs, defendants object to plaintiffs' characterization of their nonpayment as a "refusal." Defendants note that both Judge Crowley's order awarding fees and the court of appeals' order affirming the district court were silent on the issue of interest, and that no authority in this circuit exists on the question whether plaintiffs' attorneys are entitled to interest on an award of fees against the state. They assert that they "have not refused to comply with a court order but rather have challenged, under the circumstances of this case, plaintiffs' entitlement to an award of interest." Defendants' Memorandum in Opposition to Plaintiffs' Renewed Motion for a Turnover Order on the Issue of Interest at 2. Defendants characterize the issue here as whether plaintiffs are entitled to interest on the attorney's fees award, not whether plaintiffs are entitled to enforcement of an existing order to pay the interest. We must address plaintiffs' entitlement to interest before we can reach the question of collection.

Defendants argue first that because neither the district court's judgment nor the court of appeals' order mentioned interest, interest was not meant to be awarded. The federal statute governing interest on judgments is, however, phrased in mandatory terms: "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a) (1976). It has long been the law that post

the fact that the judge on whose docket the case was carried before the appeal was no longer on the bench.

judgment interest is mandatory; indeed, a judgment holder is entitled to interest even if interest is not mentioned in the judgment. *Moore-McCormack Lines, Inc. v. Amirault,* 202 F.2d 893, 895 (1st Cir.1953); *Blair v. Durham,* 139 F.2d 260, 261 (6th Cir.1943); *White v. Bloomberg,* 360 F.Supp. 58, 63 (D.Md.1973), *aff'd,* 501 F.2d 1379 (4th Cir.1974). Defendants cannot prevail, therefore, unless an award of attorney's fees under § 1988 is somehow different from other monetary awards.

■ Every reported case to address the issue has held that interest is available on an award of attorney's fees under § 1988.[4] *See Spain v. Mountanos,* 690 F.2d 742, 747–48 (9th Cir.1982); *Morrow v. Finch,* 642 F.2d 823, 826 (5th Cir.1981); *Gates v. Collier,* 616 F.2d 1268, 1272–79 (5th Cir.1980); *Robideau v. O'Brien,* 525 F.Supp. 878, 880 (E.D.Mich.1981); *Wells v. Hutchinson,* 499 F.Supp. 174, 212 n. 54 (E.D.Tex.1980); *Johnson v. Summer,* 488 F.Supp. 83, 85–88 (N.D.Miss.1980); *McPherson v. School District,* 465 F.Supp. 749, 765 (S.D.Ill.1978). *See also Glover v. Johnson,* 531 F.Supp. 1036, 1045–57 (E.D.Mich.1982) (interest available but not mandatory). It is our view that allowing interest on attorney's fees awards is necessary to fulfill § 1988's purpose of effective enforcement of the nation's civil rights laws. One of the acknowledged aims of Congress in passing § 1988 was to encourage private actions to enforce civil rights statutes in cases such as this one where the appropriate relief is injunctive rather than monetary. The Senate Report quoted with approval the following language from *Newman v. Piggie Park,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968):

> When a plaintiff brings an action under [Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(a) (1976)] he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress

considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees [42 U.S.C. § 2000a–3(b) (1976)] to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

S.Rep. No. 94–1011, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5910. Similar views were expressed during the floor debates on the legislation by Congressman Seiberling, the original sponsor of the bill:

> If the law does not authorize the awarding of attorney's fees in meritorious civil rights cases, many potential plaintiffs will be deterred from bringing deserving cases to remedy violations of the Constitution, especially those cases in which the appropriate relief is primarily equitable or injunctive rather than monetary.

122 Cong.Rec. H 12165 (daily ed. Oct. 1, 1976).

■ As noted by the Fifth Circuit in *Gates v. Collier,* 616 F.2d 1268 (5th Cir. 1980), "it must be understood that the awarding of interest is in no sense a windfall. Because a dollar today is worth more than a dollar in the future, 'the only way [a party] can be made whole is to award him interest from the time he should have received the money.'" *Id.* at 1276 (quoting *Louisiana & Arkansas Ry. Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir.1966)). Our court of appeals has stated, albeit in a different context, that

> [i]n most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt.

*Ballance v. United States,* 347 F.2d 419, 421 (7th Cir.1965) (quoting *Bruning v. United*

---

**4.** Plaintiffs appear to have misread *Bonner v. Coughlin,* 657 F.2d 931 (7th Cir.1981), which they mistakenly cite for the proposition that interest is available on an award of attorney's fees. *Bonner* upheld the district court's award of interest on the judgment, not on the award of fees. *Id.* at 937–38.

*States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907, 11 L.Ed.2d 772 (1964)). The award of fees in this case exceeded $100,000, and the court of appeals held that it was reasonable and justified. Plaintiffs' attorneys had to wait nearly fifteen months from the date of the judgment before receiving payment. We may take judicial notice of the fact that the cost of money during the period of that delay was, to say the least, high. Given the purposes of § 1988, it would be anomalous to permit the state in effect to reduce the attorney's fees award by withholding payment for a considerable length of time. *See Spain v. Mountanos,* 690 F.2d 742, 748 (9th Cir.1982); *Gates,* 616 F.2d at 1276; *Johnson v. Summer,* 488 F.Supp. 83, 87 (N.D.Miss.1980).

There is however, some support in the case law for the proposition that interest is not mandatory on an award of attorney's fees, unlike on an ordinary money judgment. In *Glover v. Johnson,* 531 F.Supp. 1036 (E.D.Mich.1982), the court, while agreeing that awarding interest on attorney's fees furthers the purposes of § 1988, chose to deny interest in the circumstances presented there. Without citing any authority to support its conclusion that the awarding of interest on attorney's fees is discretionary, the court stated:

> ... I choose to exercise my discretion and deny interest on the fee award.... I cannot be blind to the quandry in which the State of Michigan now founders.... Almost $16,600 would be accrued at a six per cent interest rate ... and, although such a sum is sizable to the groups involved, it is also very sizable to a state that is struggling against an eroding tax base and a depressed economy that strongly affects the northeastern industrial states.

*Id.* at 1047.

For different reasons, the Fifth Circuit denied interest on an award of attorney's

fees under 15 U.S.C. § 15 (1976) in an antitrust case, *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1321–22 (5th Cir.1976). *Carpa* relied upon "the traditional practice of not awarding interest on court costs," held that under 15 U.S.C. § 15 attorney's fees were considered as "costs," and reversed the district court's determination that plaintiffs were entitled to interest on their fee award. *Carpa* was reaffirmed without discussion in *Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1101 (5th Cir.1982). In *Gates v. Collier, supra,* however, a different panel of the Fifth Circuit distinguished *Carpa.* The *Gates* court regarded *Carpa* as relying heavily upon the availability of treble damages under the antitrust laws, a remedy unavailable under the civil rights statutes. *Gates,* 616 F.2d at 1273; *see Carpa,* 567 F.2d at 1322–23 & n. 5. In addition, the court in *Gates* noted that *Carpa* expressly reserved judgment on the availability of interest under other attorney's fees statutes:

> Our holding that attorneys' fees in antitrust cases are not to bear interest implied nothing whatsoever about the propriety of interest on attorneys' fees authorized by other statutes. *The language and history of a given statute might suggest that the public purposes underlying the statutory authority for attorneys' fees would be materially advanced by allowance of interest, and the absence of a treble damage provision which complements the attorneys' fee provision would also require consideration.*

*Carpa,* 567 F.2d at 1323 (emphasis supplied); *see Gates,* 616 F.2d at 1273.[5] *Copper Liquor,* which reaffirmed *Carpa,* also cited *Gates* with apparent approval, noting that the *Gates* court had distinguished *Carpa.*[6] *Copper Liquor,* 684 F.2d at 1101 n. 53.[7]

---

5. The court in *Carpa* also noted that the treble damage provisions of the antitrust laws "were designed in part to help finance litigation expenses in private antitrust suits," another reason for denying interest on fee awards in such actions. *Carpa,* 567 F.2d at 1323 n. 5.

6. *Gates'* distinguishing of *Carpa* provoked a dissent from Judge Hill, who argued that the

two cases could not be distinguished. *Gates,* 616 F.2d at 1280–84 (Hill, J., dissenting). However, defendants' petition for rehearing en banc was denied, thus lending further support for the proposition that the Fifth Circuit considers

7. See note 7 on page 299.

We agree that § 1988 presents considerations different from those present when fees have been awarded under the antitrust laws. In a case such as the present one, in which the sole relief requested is injunctive relief, the award of attorney's fees provides the sole incentive for an attorney first to agree to take the case and then to prosecute it fully. It is not unusual in civil rights litigation for cases to extend over several years, particularly where monitoring of an injunction or consent decree is involved. *See Gates,* 616 F.2d at 1276 & n. 12. That was true in the present cases as well; although the principal relief was obtained in 1978, the judgment was not made final and attorney's fees were not awarded until nearly three years later. In this kind of case, damages probably are unavailable and treble damages certainly are unavailable to complement the award of attorney's fees, unlike in an antitrust case. *See generally Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). We do not believe that *Carpa* provides us with authority for denial of interest on attorney's fees awarded under § 1988.[8]

As for *Glover v. Johnson,* we do not agree with its reasoning or its result. In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), in which the Supreme Court upheld § 1988 against an Eleventh Amendment challenge, the Court stated that "[a] federal court may treat a State like any other litigant when it assesses costs." *Id.* at 696, 98 S.Ct. at 2576; *see also Gates,* 616 F.2d at 1271. We find no support for denying interest on a civil judgment, or a judgment for attorney's fees,

because of the shaky financial condition of a private judgment debtor, and we think that the same should apply to the state when it has been ordered to pay attorney's fees under § 1988. There is nothing in the legislative history of § 1988 that suggests that Congress intended to depart from the rule that any money judgment in federal court bears interest. The holding in *Glover* would provide a state that faces financial difficulties with an economic incentive for delaying payment of an attorney's fees award (or indeed any judgment, as the logic of *Glover* cannot be restricted to attorney's fees awards) indefinitely in order to retain the use of the plaintiff's money in the interim.[9] Therefore, we reject the holding in *Glover.*

Defendants raise yet another objection to an award of interest in the present case. They argue that the lack of any mention of an award of interest in Judge Crowley's June 30, 1981 order indicates that Judge Crowley intended not to award interest. This reading of the order is supported, defendants contend, by the granting of a multiplier on the actual fees claimed by plaintiffs' attorneys. The only explanation in the June 1981 order was that Messrs. Haas, Taylor, and Thomas, and Ms. Bannister, as to whom the court applied the multiplier, had "carried the laboring oar in this litigation." *Preston v. Thompson,* No. 78 C 3512, slip op. at 5–6 (N.D.Ill. June 30, 1981). On appeal, the court of appeals interpreted this as "a recognition of the high quality of legal services provided by the four attorneys" and held that use of the multiplier was not an abuse of discretion. *Preston v. Thompson,* 681 F.2d 821, slip op. at 5–6 (7th

awards under § 1988 different from those under 15 U.S.C. § 15 when it comes to interest on such awards. *See Gates v. Collier,* 641 F.2d 403 (5th Cir.1981) (en banc) (denying petition for rehearing en banc).

7. The Fifth Circuit granted a petition for rehearing en banc in *Copper Liquor. See Copper Liquor,* 684 F.2d at 1102.

8. Moreover, *Carpa* has not been followed in other circuits. *See Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291,

1316–17 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *City of Detroit v. Grinnell Corp.,* 575 F.2d 1009, 1010 (2d Cir.1978); *Independence Tube Corp. v. Copperweld Corp.,* 543 F.Supp. 706, 716 (N.D. Ill.), *aff'd mem.,* No. 82–2183 (7th Cir. Dec. 21, 1982).

9. In any event, the state of Illinois has not pleaded poverty as a grounds for denial of interest in the instant case.

Cir.1982).[10] We find no support in either the district court's or the court of appeals' opinion for defendants' contention here. Quite the contrary, Judge Crowley's use of the multiplier had a justification independent from any desire to compensate plaintiffs' attorneys for delay in payment.[11] Defendants cite no authority, nor have we found any, for the proposition that interest on an award of attorney's fees should be treated any differently from interest on any other judgment when considering whether the absence of specific mention of interest precludes an award of interest. In short, nothing in Judge Crowley's order, including the lack of a specific award of interest, convinces us that we should depart from the rule that all money judgments in federal court carry post-judgment interest. We hold, therefore, that plaintiffs are entitled to interest on the June 30, 1981 attorney's fees award, to run from the date of entry of the award to the date of payment. The amount of the interest is to be 6% simple interest per annum. *See* 28 U.S.C. § 1961(a) (1976) (incorporating interest rate allowed under state law); Ill.Rev.Stat. ch. 110, § 2–1303 (1981) (6% interest on judgments against governmental entities).[12] This is the rate that the court of appeals applied to the judgment in *Bonner v. Coughlin*, 657 F.2d 931 (7th Cir.1981).

Having decided that plaintiffs are entitled to interest on the attorney's fees award, we must next address the question of collection of that interest. Plaintiffs assert that because defendants have delayed payment of the interest, we may treat their action as a refusal to pay. Citing Fed.R. Civ.P. 69 and 70, they have moved that we enter an order directing the defendants to pay the interest, i.e., a "turnover order." We will address the rule 70 question first.

Defendants argue that because it was not clear that plaintiffs were entitled to interest on the award of attorney's fees, their nonpayment cannot be characterized as a refusal. Absent a refusal to obey a judgment, they argue, an order under Fed.R. Civ.P. 70 is not proper. They assert that should we hold, as we now have, that plaintiffs are entitled to interest, plaintiffs should be required to follow the Illinois Court of Claims procedure to obtain payment of the interest, as they did the payment of the attorney's fees principal. While they do not in so many words state that they are willing to stipulate to the interest in the Court of Claims, the tenor of their response to the motion indicates that they are willing to do so. *See* Memorandum in Opposition to Plaintiffs' Renewed Motion for a Turnover Order on the Issue of Interest at 3 ("defendants have raised no obstacles to payment of interest upon [the]

**10.** Although the court of appeals disposed of the case in an unpublished order that, under Seventh Circuit Rule 35(b)(2)(iv), is not to be cited, that same rule contains an exception allowing an unpublished order to be cited for the "law of the case."

**11.** Defendants' reading of Judge Crowley's order is, moreover, illogical. If the purpose of the application of the multiplier were to compensate plaintiffs' attorneys for the delay between the rendering of their services and payment by defendants, Judge Crowley would not have limited the multiplier to the four lead attorneys for plaintiffs.

In addition, any suggestion that the allegedly poor performance of plaintiffs attorneys on the appeal from Judge Crowley's order should affect the applicability of interest to the award of attorney's fees for work done *before* the appeal must be rejected. The purpose of post-judgment interest is to compensate a judgment creditor for the loss of use of money, not to reward him for work well done.

Finally, there is nothing in Judge Crowley's award of fees to indicate that anything else in the award, such as the hourly rate awarded, was meant to compensate plaintiffs for delay in payment. *See Bonner v. Coughlin,* 657 F.2d 931, 937 (7th Cir.1981); *Glover v. Johnson,* 531 F.Supp. 1036, 1045–56 (E.D.Mich.1982). Any argument to the contrary simply would be misplaced here; Judge Crowley's June 30, 1981 order made no mention of the hourly rate upon which the award was based.

**12.** In April 1982, Congress amended 28 U.S.C. § 1961 to provide that interest shall be calculated according to interest rates on 52-week United States Treasury bills. 28 U.S.C. § 1961(a) (West Supp.1982). Plaintiffs have not, however, asked that we award them interest under the new statute, relying instead on the pre-1982 statute, which incorporated state law as to the rate of interest.

award"). Plaintiffs' response to defendants' invocation of the Court of Claims procedure is that the delays that attend that process and what they term "the potential unavailability of the Court of Claims remedy" render the court an inadequate forum in which to pursue their claim.

Under Ill.Rev.Stat. ch. 127, § 801 (1981), the state of Illinois may not be made a defendant or party in any court except as provided in the Illinois Court of Claims Act. The Court of Claims Act is found at Ill.Rev. Stat. ch. 37, §§ 439.1–439.25 (1981). Section 439.23 states that "[i]t is the policy of the General Assembly to make no appropriation to pay any claim against the State, cognizable by the court [of claims], unless an award therefor has been made by the court." Section 439.24 provides for a "Court of Claims Fund" from which the court may direct immediate payment of claims under worker's compensation statutes for certain public employees, claims under the Illinois crime victims' compensation statute, and any other claim of less than $1,000. As for other claims, including the claim made by plaintiffs here, it appears that a specific appropriation by the legislature (after approval by the Court of Claims) is necessary. An example of such a bill may be found in P.A. 82–989 (1982), 1982 Ill.Leg.Serv. 2526, the bill containing the appropriation for the principal amount of the attorney's fees award made by Judge Crowley. After approval by the legislature, the bill goes to the governor for signature.

The first potential problem with the Court of Claims—appropriation procedure in the present case is that it is not clear that the court will enter an award against the state representing interest. We note first that defendant has not suggested in its brief on the present motion that the Court of Claims would not make the award requested by plaintiffs. Defendants have in the past, however, apparently made reference to *City of Springfield v. Allphin*, 82

Ill.2d 571, 45 Ill.Dec. 916, 413 N.E.2d 394 (1980), a case which plaintiffs cite in their brief, which held that under the 1977 version of the Illinois statute governing post-judgment interest, Ill.Rev.Stat. ch. 74, § 3 (1977), interest could not be awarded against the state. We doubt whether *Allphin* would govern under the current statute, Ill.Rev.Stat. ch. 110, § 2–1303 (1981). The statute construed in *Allphin* read:

> Judgments recovered before any court shall draw interest at a rate of 8% per annum from the date of the same until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, or a school district or community college district.

The statute was amended in 1978, however, to read as follows:

> Judgments recovered before any court shall draw interest at the rate of 8% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, *or any other governmental entity.*

Ill.Rev.Stat. ch. 74, § 3 (1979) (*see* 1979 Ill.Laws 1060 at 1114–15) (emphasis supplied). This statute may now be found at Ill.Rev.Stat. ch. 110, § 2–1303 (1981). *Allphin*, in construing the pre-1978 statute, noted that in order to subject the state to liability for interest, "[t]he State's consent to the imposition of [interest] against it must appear in affirmative statutory language." 82 Ill.2d at 578, 45 Ill.Dec. at 919, 413 N.E.2d at 397 (quoting *Department of Revenue v. Appellate Court*, 67 Ill.2d 392, 396, 10 Ill.Dec. 536, 538, 367 N.E.2d 1302, 1304 (1977)). The post-1978 statute's reference to "any other governmental entity" is a sufficiently clear reference to subject the state to liability for interest on judgments against it.[13] Thus, the Illinois interest stat-

---

13. Before the amendment, the statute already included "unit[s] of local government," which as defined in Ill.Const. art. VII, § 1 appears to include every possible governmental unit ex-

cept school districts (also named in the interest statute) and the state. Thus, we are hard pressed to determine what the legislature

ute should not pose a barrier to an award by the Court of Claims.

■ There is some question, however, whether the Court of Claims has jurisdiction to make an award of interest. Neither party has raised this issue. Indeed, the parties seem to agree that if the state were to stipulate to an award of interest, the Court of Claims would make the award. *See* Affidavit of Jan Susler ¶ 3(b) ("According to several persons, including Ms. Bornor [defendant's attorney here], the Court of Claims will not award interest *unless the State stipulates to it* . . . .) (emphasis supplied). The Illinois statutory scheme governing the court, however, is not so clear.[14] As noted earlier, the state can be made a party in state court only to the extent authorized in the Court of Claims Act. Ill. Rev.Stat. ch. 127, § 801 (1981). The jurisdictional provisions of that act do not expressly state that the Court of Claims has jurisdiction to enter an award of interest. The closest provision is that contained in Ill.Rev.Stat. ch. 37, § 439.8(a), which states that the court has exclusive jurisdiction to hear and determine all claims against the state "for expenses in civil litigation." Post-judgment interest, however, is not an "expense" of litigation; rather, it is a means by which a prevailing party is compensated for the loss of use of money to which it is entitled. *See, e.g., Gates v. Collier,* 616 F.2d at 1276.

■ The statement that post-judgment interest is a means of compensating a prevailing party for the loss of use of money suggests, however, that the absence of specific mention in the Court of Claims Act of jurisdiction to make awards of post-judgment interest may not be fatal to plaintiffs were they to proceed there. In Illinois, as in the federal courts, it appears that there need be no specific mention in a judgment that post-judgment interest is to be awarded for such interest to apply. *See Dooley v. Stipp,* 26 Ill. 86 (1861). The Illinois statute

governing post-judgment interest, like 28 U.S.C. § 1961 (1976), is phrased in mandatory terms: "[j]udgments recovered before any court shall draw interest . . . ." Ill. Rev.Stat. ch. 110, § 2–1303 (1981). The language of the statute—"before *any court* "—suggests that the intent of the legislature was that any judgment, wherever rendered, is to draw interest. If interest is incident to any judgment in Illinois, one might construe the lack of specific mention of post-judgment interest in the Court of Claims Act as not dispositive of the question of the court's jurisdiction to enter such an award.

The above discussion, along with the parties' suggestion that the Court of Claims will enter an award of interest where the state stipulates to it, leads us to believe that the Court of Claims is not barred from making an award such as that sought by plaintiffs here. We cannot, however, be certain of this conclusion, at least as things presently stand. Certainty as to whether plaintiffs can succeed in the Court of Claims is, however, crucial to our disposition of plaintiffs' motion, for (as will be made clearer *infra* ) if plaintiffs cannot possibly satisfy their judgment under the state procedure argued by defendants to be the exclusive means of collecting a judgment against the state, their case for an order under rule 70 becomes much stronger. With that in mind, we will defer further discussion of this question until later in this opinion.

The other problems raised by plaintiffs relate to uncertainties in the Court of Claims—appropriations process. The first of these problems involves delay. Although both the Court of Claims and the Illinois legislature acted in a prompt fashion in handling the attorney's fees award in the present case, it appears that the wheels of justice do not always turn so fast. Plaintiffs' attorneys were also awarded fees in *Smith v. Rowe,* No. 77–1029 (C.D.Ill.). In

---

meant to include when it amended the interest statute, if not the state.

14. We assume that if there is a jurisdictional bar to an award of interest by the Court of Claims, the parties' stipulation would not permit such an award.

that case, the state also agreed to stipulate to the award in the Court of Claims, on October 11, 1982. Affidavit of Jan Susler ¶ 3(e). The Court of Claims complaint was filed along with the stipulation on October 13. *Id.* Because appropriations bills are presented to the legislature only in June and late in the calendar year, *id.* ¶ 3(c), even with prompt action by the Court of Claims, the award could not have been presented to the legislature any earlier than late 1982. As things happened, however, the Court of Claims did not issue its award, despite the stipulation, until December 15, 1982, which was too late for inclusion in the year-end appropriations bill. *Id.* ¶ 3(e). Thus, the earliest date on which the award in *Smith* may be presented to the legislature is June 1983. If the governor takes 60 days to sign· the bill, as he did with the bill containing the *Preston* award, it will be at least September 1983 before the award is finally authorized. Thus, in *Smith,* a delay of at least 11 months between filing in the Court of Claims and final authorization by the state is certain.

The second potential problem involves the need for the legislature to approve the award and for the governor to sign the bill. In Illinois the governor has a line-item veto on appropriations bills, Ill. Const. art. IV, § 9(d), a veto that Governor Thompson exercised as to several items included in the bill that approved the attorney's fees award in *Preston. See* P.A. 92–989 (1982), 1982 Ill.Leg.Serv. 2526, 2580–82 (West 1982). We have no indication in the present record, however, as to whether the legislature and the governor are likely or unlikely to approve a Court of Claims award of interest to plaintiffs' attorneys, and we are not inclined to speculate about the possibilities in that regard. We note, however, that the award of attorney's fees to plaintiffs here was approved without a hitch.

Based upon the uncertainties involved in the Court of Claims process, plaintiffs request that we order the state to forego the normal procedure for payment of awards against the state and simply pay the funds out of general revenues. In support of their position, plaintiffs cite *Spain v. Mountanos,* 690 F.2d 742 (9th Cir.1982); *Collins v. Thomas,* 649 F.2d 1203 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982); *Gary W. v. State of Louisiana,* 622 F.2d 804 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981); *Gates v. Collier,* 616 F.2d 1268 (5th Cir.1980); and *La Raza Unida v. Volpe,* 545 F.Supp. 36 (N.D.Cal.1982).

The cases cited by plaintiffs, as well as *Miller v. Carson,* 628 F.2d 346 (5th Cir. 1980); *Gilbert v. Johnson,* 490 F.2d 827 (5th Cir.1974) (per curiam); and *Williams v. McKeithen,* 495 F.Supp. 707 (M.D.La.1980), all involve orders by federal courts against governmental bodies (state or local bodies, with the exception of *Gilbert*) in aid of efforts to collect money judgments from those bodies. In each of the cases, the federal court issued an order under Fed.R. Civ.P. 69 or 70 compelling the governmental defendant to make payment.[15] That is, in essence, what plaintiffs request here. In order to determine the pertinence of the cited authorities in the present case, we will examine them in turn.

The seminal case on the authority of a federal court to issue a directive requiring a state to satisfy a judgment other than through procedures provided by state law is *Gates v. Collier,* 616 F.2d 1268 (5th Cir. 1980). *Gates* involved protracted litigation over conditions at a Mississippi state prison. After the state indicated its unwillingness to pay an award of attorney's fees, the district court entered an order to the responsible state officials directing them to satisfy the judgment. The state objected on the grounds that state law provided only one means by which to satisfy a judgment against the state: through appropriation by the legislature. *Id.* at 1270. The court of appeals upheld the district court's order under Fed.R.Civ.P. 70, stating that

where a state expresses its unwillingness to comply with a valid judgment of a

---

**15.** This was not the case in *La Raza Unida,* in which the court approved the issuance of a writ of execution under Fed.R.Civ.P. 69(a). *See* discussion *infra.*

federal district court, the court may use any of the weapons generally at its disposal to ensure compliance. "[F]ederal courts are not reduced to issuing [judgments] against state officers and hoping for compliance."

*Id.* at 1271 (quoting *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978)). The court noted that "[t]he defendants [had] made it abundantly clear that they intend[ed] to resist the judgment to the bitter end. Given such obstinance, we think it beyond peradventure that the remedy fits the wrong." *Id.* at 1271–72.

Like *Gates, Gary W. v. State of Louisiana,* 622 F.2d 804 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981) and *Spain v. Mountanos,* 690 F.2d 742 (9th Cir.1982) presented instances of conduct by the state amounting to a refusal to pay a judgment. In *Gary W.,* the Louisiana state constitution prohibited the payment of judgments against the state except from funds appropriated by the legislature. However, bills to authorize payment had been introduced in the legislature on two occasions but had not passed. *Gary W.,* 622 F.2d at 805. Similarly, in *Spain* the state senate had refused to pass an appropriation to satisfy an award of attorney's fees under § 1988. In each case, the federal court responded by issuing an order under Fed.R.Civ.P. 70. In *Spain,* the state argued that execution under Fed.R. Civ.P. 69 was the sole means of enforcing the award. The court disagreed, stating that

> under the extraordinary circumstances here where the judgment is against a state, which refuses to appropriate funds through the normal process provided by

state law, the district court should not necessarily be reduced to satisfying a judgment through the cumbersome procedure of attempting to execute against state property or bank accounts. It may, instead, pursue any remedy provided in Rule 69 or Rule 70 to enforce the award, including ordering state officials to pay the claim.

*Spain,* 690 F.2d at 745.[16]

*Gilbert v. Johnson,* 490 F.2d 827 (5th Cir. 1974), an action by an individual wrongfully terminated by the Veteran's Administration, involved an inordinate delay in payment by the defendant of a back pay award. The award was entered in June 1972, but as of 11 months later, and apparently as of the date of the Fifth Circuit's opinion in March 1974, the Veteran's Administration had failed to pay. The court held that plaintiff could proceed under Fed. R.Civ.P. 70, noting that "[t]he stated position of the Veterans Administration is unsatisfactory as to why it has failed to pay the money judgment rendered against it in June 1972 . . . ." *Id.* at 829.

In *La Raza Unida v. Volpe,* 545 F.Supp. 36 (N.D.Cal.1982), the court approved the entry of a writ of execution under Fed.R. Civ.P. 69(a) to enforce an award of attorney's fees against the state of California.[17] No legislator could be found to sponsor an appropriations bill to satisfy the award, and no appropriation was made. The court followed *Gates* and *Gary W.,* stating that "states should not be allowed to shield themselves from federal court judgments by enacting laws requiring legislative appropriations before payment of judicial awards. Otherwise, states would in effect

---

**16.** The court in *Spain* noted, 690 F.2d at 745 n. 3, that use of a writ of execution presented certain difficulties. Rule 69 incorporates state procedure on execution, "except that any statute of the United States governs to the extent that it is applicable." California had a statute providing that state execution statutes did not apply to judgments against the state. Although the court suggested that under rule 69, § 1988 would permit execution notwithstanding contrary state law, it questioned whether

"the spectacle of federal marshalls [sic] seizing State property or bank accounts is somehow less destructive of the principles of federalism than the method chosen here by the district court." *Id.*

**17.** The court also held that Fed.R.Civ.P. 70 would provide authority for an order enforcing an award of attorney's fees. *La Raza Unida,* 545 F.Supp. at 39.

be immune from paying attorneys' fees awards ...." *Id.* at 39.[18]

We have found only two cases in which an order of the sort requested by plaintiffs here was made in the absence of conduct amounting to a refusal by the state to pay a judgment. In *Williams v. McKeithen,* 495 F.Supp. 707 (M.D.La.1980), the court awarded attorney's fees of $27,500 under § 1988. The court ordered that the judgment be paid directly from the funds of the state department of corrections, a defendant in the case. It stated that "[a]lthough the defendants have not yet objected to the payment of these fees out of state funds on the ground that the Louisiana Constitution prohibits payment of judgments against the state except from funds appropriated by the legislature, the Fifth Circuit Court of Appeals has recently ruled that such a defense is without merit. *Gary W. v. State of Louisiana.*" *Id.* at 710–11. In *Collins v. Thomas,* 649 F.2d 1203 (5th Cir.1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982), the district court had entered an order, along with the judgment for attorney's fees, directing that the award was to be paid promptly out of county funds. The county objected, citing Texas law to the effect that the sole avenue under state law for plaintiffs to enforce their judgments was by writ of mandamus in state court. *Collins,* 649 F.2d at 1205. The court rejected what it termed "this restrictive view of the power of federal courts to enforce their judgments against Texas counties." *Id.* at 1206. It stated that "[t]he County may not successfully hide behind state procedural shields to avoid the consequences of a valid district court judgment effectuating an appropriate § 1988

award." *Id.* The court upheld the district court's order, relying on both Fed.R.Civ.P. 69 and Fed.R.Civ.P. 70.

With the exception of *Williams* and *Collins,* all of the cases discussed above involve recalcitrance on the part of the state before relief was granted under Fed.R.Civ.P. 70. This is, we think, unsurprising, given the wording of the rule:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act *and the party fails to comply within the time specified,* the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court ....

Fed.R.Civ.P. 70 (emphasis supplied). *See also* 12 C. Wright & A. Miller, Federal Practice and Procedure § 3021 at 75 (1983) ("Rule 70 gives the courts ample power to deal with *parties who seek to thwart judgments by refusals to comply* with orders to perform specific acts") (emphasis supplied); 7 J. Moore, Moore's Federal Practice ¶ 70.02 at 70–2.1 (1982) ("Rule 70 ... is intended primarily to preclude recalcitrant parties from frustrating court orders for the performance of specific acts").[19] We believe that *Williams* and *Collins* are misplaced in their reliance upon Fed.R.Civ.P. 70 where there is no indication that the state's normal procedures for collection of judgments against it will not prove successful.[20]

In the present case, the state has not yet manifested any hesitation or reluctance to comply with the court's judgments. Indeed, it acted in a prompt and cooperative fashion in handling the award of the attor-

---

18. *Miller v. Carson,* 628 F.2d 346 (5th Cir.1980) does not indicate the nature of the state's noncompliance with the judgment entered there, but the court noted that "given the state's 'unwillingness to comply,' the district court had the power to create and hold [a judgment] fund ...." *Id.* at 349.

19. Defendants have argued that an order under rule 70 is inappropriate where, as here, the underlying judgment is one for money. Indeed, the wording of the rule suggests that defendants are correct. However, we believe that in proper circumstances a rule 70 order is appropriate to enforce an attorney's fees award

against the state. *See Spain v. Mountanos,* 690 F.2d at 744–45; *Gary W. v. State of Louisiana,* 441 F.Supp. 1121, 1125 (E.D.La.1977), *aff'd,* 622 F.2d 804 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981).

20. *Collins* may perhaps be justified under Fed. R.Civ.P. 69(a), which incorporates state practice in enforcing judgments. Perhaps the court in *Collins* acted as its state counterpart would have had the judgment creditor applied for a writ of mandamus there, thus following "state practice."

ney's fees in the present case. Although we have held that plaintiffs are entitled to interest on the award of attorney's fees, defendants had a colorable defense to that claim, given the lack of mention of interest in the award itself and the lack of authority in this circuit on the question whether interest is available on an award of attorney's fees under § 1988. The documents filed by the parties on the present motion indicate that a key element in the state's nonpayment of interest was the uncertainty over whether plaintiffs were entitled to such an award. We cannot say, on the present record, that defendants have "refused" to comply with any judgment of this court. Thus, under the cases discussed above, there is no basis at present for an order under rule 70.

Given the lack of a refusal by defendants to comply with the court's judgment, can we nevertheless issue an order under rule 70 without giving the state an opportunity to comply with the judgment through its normal procedures? Plaintiffs argue that the delays that attend the Court of Claims—appropriation process are unreasonable and that they should not be required to jump through the hoops the state of Illinois has placed before them. While we would not hesitate to grant an order of the type requested by plaintiffs were there to be some sort of a "breakdown" in the state's appropriation process, we think that a federal court should not lightly interfere with the orderly processes of state government where no wrongdoing or conduct amounting to a refusal to comply with a valid federal court order has occurred. The state presumably has valid reasons for desiring to use the normal processes—for example, the need to reconcile other budgetary matters with the duty to pay the award to plaintiffs here, or perhaps the absence of "discretionary funds" from which the interest can be paid.

While it is beyond doubt that a federal court's judgment stands, by virtue of the supremacy clause, above contrary or interfering state law, Illinois has not yet manifested any reluctance to comply with the instant judgment. In a somewhat different context under the supremacy clause (the

question whether federal law preempts state law), the Supreme Court has held that the essential inquiry is whether state law "stands as an obstacle to the accomplishment and execution of the full purposes" of federal law. *Aronson v. Quick Point Pencil,* 440 U.S. 257, 262, 99 S.Ct. 1096, 1099, 59 L.Ed.2d 296 (1979); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). We cannot say, as things now stand, that the state's Court of Claims—appropriations procedure stands as an obstacle to the fulfillment of our judgment that plaintiffs are entitled to interest on the award of attorney's fees.

As we noted earlier, however, it is not entirely clear to us that the Court of Claims will make an award of interest against the state, with or without stipulation by the state's representatives. This is, we have suggested, crucial to our holding on plaintiffs' motion under Fed.R.Civ.P. 70. If the only procedure held out by the state will prove fruitless, we do not think that plaintiffs should be required to go through the motions just to satisfy the state's desire for procedural regularity. Cf. *Izaak Walton League of America, Inc. v. Costle,* 571 F.2d 359, 363 (7th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978) (administrative remedies need not be exhausted if to do so would be a futile gesture) (citing *City Farmers Trust Co. v. Schnader,* 291 U.S. 24, 34, 54 S.Ct. 259, 262, 78 L.Ed. 628 (1934) and *Montana National Bank of Billings v. Yellowstone County,* 276 U.S. 499, 505, 48 S.Ct. 331, 333, 72 L.Ed. 673 (1928)). Because the state of Illinois is a party in every Court of Claims proceeding, we think defendants have it within their power to advise us as to whether the Court of Claims will make an award of interest in the circumstances presented here. Thus, as part of our disposition of the present motion, we will require the parties to appear before us for the purpose of informing the court 1) whether the state will stipulate in the Court of Claims to the award of interest; 2) whether the court will make the award if the state stipulates to it; and 3) whether the court will make the award if

the state does not so stipulate. For the present, plaintiffs' motion based on Fed.R. Civ.P. 70 is denied without prejudice. If the Court of Claims procedure is demonstrated to us to be futile, we will entertain a renewed motion. Moreover, on the authority of *Gilbert v. Johnson,* we will monitor the proceedings in the Court of Claims and in the state legislature to determine whether the matter is unreasonably or inordinately delayed, and will entertain a renewed motion by plaintiffs under rule 70 should that occur.

■ This resolves, at least for the present, the question whether plaintiffs are entitled to relief under Fed.R.Civ.P. 70. Plaintiffs have also cited Fed.R.Civ.P. 69 as authority for their motion. Rule 69 governs enforcement of federal court judgments through a writ of execution and "proceedings supplementary to and in aid of a judgment." We do not understand plaintiffs to request a writ of execution against the state. Thus, our determination of whether plaintiffs can obtain relief under rule 69 requires us to decide only whether other "proceedings ... in aid of a judgment" are available here under that rule.

Under rule 69, the procedure on proceedings in aid of a judgment is "in accordance with the practice and procedure of the state in which the district court is held ..., except that any statute of the United States governs to the extent that it is applicable." Fed.R.Civ.P. 69(a). The inquiry under rule 69, therefore, involves two steps: first, is the relief requested by plaintiffs permitted under Illinois law? and second, if it is not permitted by Illinois law, is there a federal statute that applies and permits us to grant the relief?

The order requested by plaintiff cannot be justified by reference to Illinois law. We have found only two Illinois statutes that could conceivably authorize a "turnover order." The first, Ill.Rev.Stat. § 2–

1304 (1981), states that whenever any party is required to perform an act other than the payment of money, the court may provide that the order shall be a lien on the party's property until complied with. This statute appears to be somewhat similar to Fed.R. Civ.P. 70. However, it expressly states that it does not apply where the court order in question requires only the payment of money. Thus, plaintiffs cannot seek relief under § 2–1304.

The other relevant Illinois statute is Ill. Rev.Stat. ch. 110, § 2–1402 (1981), which concerns "supplementary proceedings" in aid of collection of a judgment. Under § 2–1402(a), a judgment creditor is entitled to examine the judgment debtor in order to discover assets "not exempt from the enforcement of a judgment thereon." Section 2–1402(b) provides for the granting of relief "[w]hen assets or income of the judgment debtor not exempt from the satisfaction of a judgment ... are discovered." A court may, upon finding such assets, compel the judgment debtor to deliver up assets to be applied to the judgment, compel the debtor to pay the judgment in installments, compel any other person holding assets belonging to the debtor to deliver them up, and the like. *See* Ill.Rev.Stat. ch. 110, § 2–1402(b)(1–6) (1981). At first blush, this statute appears to authorize the relief plaintiffs have requested. However, in order to grant relief under § 2–1402, a court must first find that the judgment debtor has assets "not exempt from enforcement of a judgment thereon." The question whether the state of Illinois' assets are exempt from enforcement of a judgment is a difficult one. Certainly they would be so exempt in the courts of Illinois, because the Court of Claims has exclusive jurisdiction of claims against the state, and legislative appropriation is the exclusive method of enforcing a judgment of the Court of Claims.[21] Whether a different result ob-

---

**21.** From materials submitted to us by plaintiffs it appears that the state does not always insist on the Court of Claims procedure. Plaintiffs submitted to us two orders from other judges in this district which purported to deny mo-

tions made by the state to satisfy judgments through the Court of Claims procedure. *See* Illinois Welfare Rights Organization *("IWRO") v. Miller,* No. 73 C 2437 (N.D.Ill. Mar. 4, 1983) (Flaum, J.); *Howarter v. Fahner,* No. 81 C 1272

tains in this court is a difficult question. One might question whether a state's rules concerning what property is and is not subject to enforcement of judgments, and prescribing exclusive methods for satisfying judgments against certain parties, is a matter of "the practice and procedure of the state" which Fed.R.Civ.P. 69(a) adopts. In *Balark v. Curtin,* 655 F.2d 798, 801 n. 4 (7th Cir.1981), the court raised but did not answer this question in a similar context. Although the parties have not addressed this question specifically, the cases we have found indicate that rule 69(a) incorporates state exemptions. Rule 69(a) represents the adoption of prior practice under former 28 U.S.C. § 727, Rev.Stat. § 916. *See United States v. Yazell,* 382 U.S. 341, 355, 86 S.Ct. 500, 508, 16 L.Ed.2d 404 (1966); *Gabovitch v. Lundy,* 584 F.2d 559, 561 (1st Cir. 1978); Fed.R.Civ.P. 69(a), 1937 Notes of Advisory Committee on Rules, *reprinted in* 7 J. Moore, Moore's Federal Practice ¶ 69.-01[2] at 69–3 (1982). Under § 916, the Supreme Court held that a "homestead" exemption provided by state law exempting certain property from execution was applicable as against federal court judgments as well. *Fink v. O'Neil,* 106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196 (1882); *see United States v. Yazell,* 382 U.S. 341, 354–56, 355 n. 31, 86 S.Ct. 500, 507–08, 508 n. 31, 16 L.Ed.2d 404 (1966). Courts applying Fed.R.Civ.P. 69(a) have reached like results. *See, e.g., First National Bank v. Santisteban,* 285 F.2d 855 (1st Cir.1961) (applying Puerto Rican bar against garnishment of future wages); *United States v. Miller,* 229 F.2d 839 (3d Cir.1956) (applying Pennsylvania bar against garnishment of future wages);

*United States v. Hackett,* 123 F.Supp. 106 (W.D.Mo.1954) (applying Missouri "head of family" exemption of certain percentage of judgment debtor's property). Whether a state could completely shield its assets from execution or levy is a question the parties have not addressed and one that is not presented here, as Illinois has provided a procedure by which a party can satisfy a judgment against the state.

Because the "practice and procedure" of Illinois does not permit the relief requested by plaintiffs, at least not at this juncture, we must address the question whether any federal statute that applies to the enforcement of awards of interest permits plaintiffs to obtain an order compelling the controller of the state of Illinois to pay plaintiffs out of general revenues. We have found no federal statute that expressly so provides. However, the district court in the *Gary W.* case held that § 1988 was a statute that permitted an order for direct payment from the treasury of a state despite the lack of authority in state law for such an order. *Gary W. v. State of Louisiana,* 441 F.Supp. 1121, 1125–27 (E.D.La.1977), *aff'd,* 622 F.2d 804, *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). The district court in *Gary W.* noted that § 1988 itself says nothing about the method of its enforcement. However, the court stated, "it was intended to be effective against [state officials], not to be hortatory." *Gary W.,* 441 F.Supp. at 1126. It then quoted the following statement from the legislative history of the 1976 amendments to § 1988:

As with the cases brought under 20 U.S.C. § 1617, the Emergency School Aid

---

(N.D.Ill. May 25, 1982) (Aspen, J.). These orders plainly cannot support the weight plaintiffs seek to place on them. The order in *Howarter* is simply a two-sentence order denying the state's request to process an attorney's fees award through the Court of Claims. It does not indicate either the judge's reasoning or the circumstances of the motion and order. The order in *IWRO* provides even less authority for plaintiffs' position here; indeed, we are troubled that plaintiffs would present it to us, as they have, as indicating that Judge Flaum "reject[ed]" the State of Illinois' motion to compel the plaintiff to pursue collection in the Court of

Claims." Notice of Supplemental Authority at 1. The order itself quite clearly states that it is an agreed order, a form of consent judgment, which Judge Flaum was requested to sign after the parties had settled the matter. The order cannot by any stretch of the imagination constitute authority for plaintiffs' position here. At most, it indicates that the state at times waives the Court of Claims process, not that a court may compel it to do so. We might suggest, however, that the state consider acting in a similar manner here, particularly as it has indicated that it plans to stipulate to the entry of the award in the Court of Claims.

Act of 1972, defendants in these cases are often State of local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, *will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party.)* S.Rep. No. 94–1101, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5913 (1976) (emphasis supplied). *See Gary W.,* 441 F.Supp. at 1126. The court in *Gary W.* stated that this language permitted plaintiffs to obtain a writ of execution against the assets of the state of Louisiana despite a prohibition in state law. *Id.* at 1126–27.

It must first be noted that the discussion of this question in *Gary W.* is dictum; the court stated that an order under rule 69 was unnecessary because of the availability of relief under rule 70. *Id.* at 1125. In fact, the order that the district court granted, and that the Fifth Circuit in *Gary W.* affirmed, was made under Fed.R.Civ.P. 70. *Id.* at 1127; *see Gary W. v. State of Louisiana,* 622 F.2d at 806–07. Nevertheless, we must address the *Gary W.* court's views on the question.[22] In our view, the legislative history quoted in the district court's opinion in *Gary W.* simply states *from whom* a judgment for attorney's fees may be collected and does not describe *how* such a judgment may be collected. We do not think that the statements contained in the legislative history are sufficient to render § 1988 a statute that, under Fed.R.Civ.P. 69(a), takes precedence over state legislation that prescribes procedures for enforcing judgments. The statutes cited in the Advisory Committee's notes following rule 69 all involve federal statutes that specifically set forth procedures to be followed when executing on judgments, define the geographic scope of executions, or grant exemptions from execution or levy. *See* Fed.R.Civ.P. 69(a) Notes of Advisory Committee on Rules (listing statutes of the United States that govern under rule 69 where applicable). *See also Textile Banking Co., Inc. v. Rentschler,* 657 F.2d 844, 851 (7th Cir.1981) (state law is subordinated under Fed.R.Civ.P. 69(a) only where there exists a federal statute that fulfills a function comparable to the state procedure).

There is no other federal statute that modifies in any way the procedures set forth under Illinois law for the enforcement of judgments. The post-judgment interest statute upon which plaintiffs rely, 28 U.S.C. § 1961 (1979), states that "[e]xecution [for interest on a judgment] may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State." This statute, too, refers us back to state law. State law is unclear as to whether the assets of Illinois are exempt from execution or levy under Ill.Rev.Stat. ch. 110, § 2–1402 (1981) or any other statute. We have held that if Illinois' normal processes for collecting a judgment against the state proves unavailable or inadequate, we will entertain a renewed motion to enter an order under Fed.R.Civ.P. 70 requiring payment. We do not believe, however, that we have the authority under Fed.R.Civ.P. 69 presently to enter the order plaintiffs have requested.

In summary, plaintiffs are entitled to interest on the award of attorney's fees at the rate of 6% per annum from the date of the award, June 30, 1981, to the date of payment by the state. Plaintiffs are not, however, entitled to a "turnover order" under rules 69 or 70 at this time. Plaintiffs must attempt to collect their interest through the procedures permitted under Illinois law. The parties are directed to appear in court on April 8, 1983, at 9:30 a.m. for a status

---

**22.** *Spain v. Mountanos,* which also suggested that § 1988 was a statute that would take precedence over state procedures for execution, simply relied on *Gary W.* for that statement. *Spain,* 690 F.2d at 745 n. 3. While it also cited *Collins* for the point, *Collins* does not discuss the question but rather holds that § 1988 prevails over state law governing enforcement of judgments. *Collins,* 649 F.2d at 1206.

report. At that time, defendants will be expected to inform the court as to whether the Illinois Court of Claims will make an award of interest against the state where the state stipulates to an award, if it will do so where the state does not stipulate, and whether the state intends to stipulate to the award of interest in the court of claims.[23]

See also 565 F.Supp. 294.

---

23. We will entertain a motion for an award of attorney's fees under 42 U.S.C. § 1988 (1976 & Supp. IV 1980) in connection with the pending motion. Although we have denied the motion for a turnover order without prejudice, plaintiffs have obtained several rulings that will assist them materially in collecting the award of interest. First, we have held that they are entitled to interest on the award of attorney's fees. Second, we have held that Illinois' statutory procedures for collecting judgments against the state may be applied only to the extent that they provide plaintiffs with an available and reasonably speedy remedy. We regard plaintiffs' attorneys' work in connection with the present motion as connected with establishing their entitlement to attorney's fees (for the award of interest serves mainly to compensate them for time spent in awaiting payment of that award) and in collecting a judgment under the civil rights laws. *See Bond v. Stanton,* 630 F.2d 1231, 1235 (7th Cir.1980); *Balark v. Curtin,* 655 F.2d 798, 802–03 (7th Cir.1981).